## The Baldwin Company, Plaintiff in Error, v. Samuel Paley, Defendant in Error.

### Gen. No. 15,351.

1. AGENCY—*what not promise other than that contained in a printed form of contract.* If an agent fixes the selling price of merchandise at a less sum than that specified in a contract and gives a receipt for the amount of the reduction, the transaction is valid and binding on the principal and is not affected by printed notice contained on such contract which would suggest a lack of authority upon the part of the agent to change the form of the contract.

2. MUNICIPAL COURT—*how objections to instructions must be made.* Objections to instructions given in the Municipal Court must be specific and made immediately after the giving thereof and before the jury retires; failure so to make objections precludes the urging thereof on review.

Error to the Municipal Court of Chicago; the Hon. ISADORE H. HIMES, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1909. Affirmed. Opinion filed April 18, 1911.

**Statement by the Court.** This action was originally brought in the Municipal Court of Chicago as one of the fourth class. Judgment was entered in favor of defendant and plaintiff sued out a writ of error.

Plaintiff in error (plaintiff below) is a manufacturer of pianos, with a retail establishment in Chicago, from whom defendant in error purchased a piano.

Plaintiff claims to have sold a piano to defendant for $550. It concedes that $425 in cash has been paid by the defendant, and it sues upon the original contract or promissory note for the balance of $125 and accrued interest. Defendant produced upon the trial a receipt for $125, signed by the salesman of plaintiff, from whom he purchased the piano, and claimed that, though the contract or note was made out for $550, yet it was definitely agreed that he was to pay but $425, the remaining $125 being represented by the receipt

for that amount which the salesman gave to him at the time he signed the contract or note.

A trial was had in the court below before a jury who returned a verdict in favor of the defendant, and plaintiff in error seeks a reversal in this court solely upon the ground that the 7th, 8th, 9th and 10th instructions given to the jury were erroneous. The instructions complained of were as follows:

"7. The jury are instructed that the words 'General office, The Baldwin Company, Cincinnati, Ohio, D. H. Baldwin & Company, are not responsible for any written or verbal contract or promise other than that written or printed on the face of this contract', appearing on the face of the contract introduced in evidence about the words and figures, 'October 10, 1906', that being the date of said contract, are no part of said contract and constitute but a mere notice and they are not binding on the defendant unless it is shown from the evidence that the defendant had actual notice thereof before said contract was signed by him.

"8. The court instructs the jury that when an employer denies that his agent had authority to make the particular contract, it is the employer's duty promptly to disavow his agent's act as soon as he receives knowledge thereof, and if the employer does not do this, or if he does, and thereafter accepts the benefits of the unauthorized act, the employer will be held to have accepted and ratified the agent's act and will be bound by it, and if in this case, you believe from all the evidence that J. Handelsman made an unauthorized contract with the defendant on behalf of the plaintiff and that the signing of the contract and the giving of the receipt constitute but one transaction, and that the plaintiff received knowledge thereof and thereafter accepted the benefits of said contract, then the plaintiff will be deemed to have accepted and ratified the said unauthorized contract and will be bound thereby.

"9. The jury are instructed that if you believe from all the evidence that J. Handelsman, on behalf of the plaintiff, did make an unauthorized contract with the defendant, then the plaintiff could not ratify said con-

tract in part and reject it in part and plaintiff could not accept that part which was favorable to it and reject that part which was favorable to the defendant, but plaintiff must reject the entire contract or accept the entire contract, and if in this case you further believe from the evidence that the signing of the contract and the giving of the receipt was one transaction and that plaintiff received notice of said unauthorized agreement with the defendant and thereafter accepted the benefits of said contract and received the future payments thereon, the plaintiff cannot recover.

"10. The court instructs the jury that when a person without authority undertakes to make a contract for another, the latter is not bound by the acts of the former, but the unauthorized contract may be made valid by the subsequent acceptance and ratification of the party for whom it is alleged to have been made."

S. E. THOMASON, for plaintiff in error.

E. C. MAPLEDORAM, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

The accuracy of these instructions, of course, depends largely upon their applicability to the evidence before the court.

It appears that prior to the date of the contract defendant had visited the establishment of plaintiff, where he was waited upon by one Handelsman, one of its salesmen, who held himself out to be manager of the sales department. The piano in question was finally selected, and Handelsman offered to sell it for $550. From this point on the testimony is in conflict. Plaintiff claims that the piano was sold for that amount, and that the transaction was evidenced by a note or contract, which reads as follows:

''General Office
The Baldwin Company,
Cincinnati, Ohio.

D. H. Baldwin & Co. are not responsible for any written or verbal contract or promise other than written or printed on the face of this contract.

$550.00.                                              Oct. 10, 1906.

For value received, I, the undersigned    *    *    * promise to pay to the order of D. H. Baldwin & Co. Five Hundred and Fifty Dollars, at their office in Chicago, Ill., as follows:   One Hundred Dollars cash, & Twenty-five Dollars per month until paid in full, first payment of Twenty-five Dollars due Dec. 1/06, with interest on each payment at the rate of six per cent per annum from the date hereof, until fully paid if not paid on maturity.    *    *    *

SAMUEL PALEY   (Seal).

READ THE ABOVE BEFORE SIGNING.

Witnessed by
     A. HANDELSMAN.''

Defendant contended that he had refused to purchase the piano at the $550 mentioned, and that subsequent to his visit to the establishment of plaintiff he had an interview with Handelsman, to whom he said that he would take the instrument at $400, whereupon Handelsman said he would let him know the following day; that a day or two later Handelsman called him up by telephone and told him that if he wished the piano "it will be $425," whereupon Paley told him to ship it out, and the piano was thereupon sent out; this was on the 8th of October, up to which time there had been no papers signed; a day or two later Handelsman brought in blanks and wrote out the contract or note, and directed Paley to sign it, stating to him, according to Paley's testimony, "You know we cannot have this piano go out of our store for less than $550, and we must show it on our books, but I will give you a receipt right here for $125, credit."

Accordingly, the contract or note was signed, $100 was paid in cash, for which a receipt was given, in

addition to the receipt for $125, and Handelsman told Paley (referring to the $125, for which the receipt purported to be given), "You do not have to pay the five months at $25, but you can use it if you want to; you can pay $25 for five months and let it go until the last, just as you want to pay, until the $425 is paid up."

A copy of the contract or note was also delivered to Paley, who says he thinks he saw the line "D. H. Baldwin & Company" when the contract was made out.

The two receipts were offered in evidence and read as follows:

"October 10, '06.

Rec. of Sam Paley One hundred dollars first payment on Baldwin Piano No. Emp. Moh. No. 10978.

D. H. BALDWIN & COMPANY,
Per J. HANDELSMAN."

"Chicago, October 15th, '06.

Rec. of Sam Paley One hundred and twenty five dollars to apply on Baldwin Company No. Emp. Moh. No. 10978.

D. H. BALDWIN & COMPANY,
Per J. HANDELSMAN."

In December, 1906, Paley received a letter from plaintiff, dated the 8th, asking payment of $125 and interest due on his piano contract, and stating that in selling the instrument it was the understanding that the payments should be made promptly, and asking for a remittance. Upon receipt of this letter Paley consulted his lawyer, who, on his behalf, on the 10th of December wrote plaintiff a letter in which he stated that "Mr. Paley informs me that his contract price for your piano was $550 on which he was to be allowed a credit of $125, and he holds a receipt to that effect, and on the date of the purchase of the piano he paid $100 cash on the piano, which leaves $325 due. Mr. Paley is perfectly willing and anxious to comply with the terms of his contract, but he informs me that you question the amount due on the contract, and I have advised him, that until the matter is settled, to take no further action. If you are not satisfied with the state-

ment of the case I have just made, why you can have your piano, and by returning the $100 to Mr. Paley, or if you are satisfied with the $325 which he now admits to be due, he will go on and make the further payments as the contract calls for. Please let me hear from you.''

On January 15, 1907, plaintiff wrote Paley notifying him that Handelsman was no longer in their employ, and consequently had no authority to transact business nor receive money for them, advising him that his total credit at that date was $150, and asking him to advise if there was any discrepancy according. to their receipts. To this letter Paley replied on the 17th of January: ''I have already informed you, and I inform you again that I claim a credit upon my contract with you for $125 allowed me by your manager, Mr. Handelsman, and $150 cash that I have paid you myself. That is $100 paid to Mr. Handelsman, and two payments of $25 each at your store. When the payments under the contract become due I shall make them. There is now due on the contract $275, which will be paid according to the contract, and that is all I will ever pay.''

After sending this letter, Paley made all the rest of the payments that were due to complete the amount of $425, and upon the last check of $25, dated December 2, 1907, placed the words, ''Paid in full up to date.'' This check the plaintiff accepted and used.

Subsequent to this payment the suit was brought for the remaining $125, plaintiff contending (1) that the receipt was in fact given by Handelsman to Paley in consideration of Paley's promise to sell five pianos for him, which he failed to do; and (2) that Handelsman had no authority to bind the company by the receipt for $125.

At the trial one Dickinson testified for plaintiff that he was manager of its Chicago business, and that he received the letter from Paley of December 10th and

knew there was a dispute about the contract, but they were not willing to take back the piano, nor give back the $100, because they had his contract for $550, and if a man signs a contract, they expected him to pay it.

A trial was had in December, 1908, and the following entry appeared upon the books of the plaintiff, which were offered by defendant:

"Mr. J. Handelsman,

Chicago.

In account with The Baldwin Company,

Dr".

(Among many other items are the following:)

"1907

Aug. 1.   Reduction made on Price of Pno.

To S. Paley without authority.              $125.00

May 14, 08.

To balance,                                 224.68."

It thus appears that not only did the plaintiff continue to accept payments from Paley after being substantially informed by him that, unless they were satisfied with his understanding of the amount due, he would not make any further payments, but that the plaintiff itself thereafter charged the amount in controversy to its agent, Handelsman, thus indicating its assent to the contention of Paley.

It appears to be the contention also of plaintiff in error that the printed words:

"General Office,

The Baldwin Company,

Cincinnati, Ohio.

D. H. Baldwin & Co. are not responsible for any written or verbal contract or promise other than written or printed on the face of this contract," and the words: "Read the above before signing," became in legal contemplation a part of the contract or note sued on, and that, therefore, the transaction between defendant and Handelsman, its agent, by which the latter receipted to Paley for $125, was not binding upon it.

We cannot assent to this contention. The note was complete in itself, and the words quoted were no part of the contract sued upon.

Plaintiff complains of certain instructions. Rule 8 of the Municipal Court, of which we are required to take notice under section 20 of the Municipal Court Act, is as follows:

"Objections to the giving or refusing of oral instructions to the jury must be specific, and must be made immediately upon the conclusion of the charge, and before the jury retire."

The manifest purpose of this rule was to give the court the benefit of specific objections to the instructions complained of, in order that the court might, if he so desired, modify the instructions in the particulars complained of before the jury should retire. In this case the objections to the instructions were too general to be availed of in this court. Grollman v. Lake Geneva Piano Stool Co., 147 Ill. App. 332.

Even if they were properly before us, we should be compelled to hold that they stated with substantial accuracy the law applicable to the case.

Finding no reversible error in the record before us, we must affirm the judgment of the court below.

*Affirmed.*